UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MEGAN AROON DUNCANSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WINE AND CANVAS IP HOLDINGS LLC, )<br>WINE AND CANVAS DEVELOPMENT, )<br>LLC, )<br>WNC OF CINCINNATI LLC, )<br>WNC OF COLUMBUS LLC, )<br>WNC OF DAYTON LLC Clerk's Entry of )<br>Default Entered 12/27/2017, )<br>WNC OF DETROIT LLC Clerk's Entry of )<br>Default Entered 12/27/2017, )<br>WNC OF DES MOINES LLC, )<br>WNC OF FORT WAYNE LLC Clerk's Entry )<br>of Default Entered 12/27/2017, )<br>WNC OF LAS VEGAS LLC Clerk's Entry of )<br>Default Entered 12/27/2017, )<br>WNC OF NAPA SONOMA LLC Clerk's )<br>Entry of Default Entered 12/27/2017, )<br>WNC OF ODESSA LLC, )<br>WNC OF PORTLAND LLC, )<br>WNC OF SOUTH BEND LLC, )<br>WNC OF SAN FRANCISCO LLC, )<br>TAMRA MCCRACKEN a/k/a Tamra Scott, )<br>ANTHONY SCOTT, )<br>)<br>Defendants. ) | No. 1:16-cv-00788-SEB-DML |

**ORDER**

On July 17, 2020, the Court denied without prejudice (for the second time) the parties' Joint Motion for Consent Decrees. [Dkt. 308]. We ordered the parties to revise and resubmit corrected filings along with a renewed motion in accordance with the

1

findings and directives of our July 17, 2020 Order. [*Id.*]. Now before the Court is the parties' Amended Joint Motion for Entry of Consent Decrees accompanied by their proposed consent decrees. [Dkt. 309].[1] For the reasons set forth herein, and with some frustration, this motion is (again) **denied.**

## Discussion

### I.     The Parties' First Motion for Entry of Consent Decrees

Plaintiff Megan Aroon Duncanson initiated this action on April 11, 2016, alleging violations of the United States Copyright Act, 17 U.S.C. §§ 101, 502 [Dkt. 1]. On February 13, 2020, the Court received notice that a settlement had been reached among all the parties to this lawsuit, which, at that time, had been lingering (often somnolently) on the Court's docket for nearly four years. [Dkt. 281]. Despite various challenges to wrangle the parties into filing the necessary dismissal documents to close this case on the Court's docket, [*see* Dkt. 284, 293], the Court (fervently) hoped that closure would finally come upon the May 20, 2020 filing of the parties' "Motion for Entry of Agreed Judgments, Agreed Injunctions, and for Other Relief." [Dkt. 300].

Unfortunately, this motion and its accompanying submissions, consistent with the parties' continuing faltering in this litigation, embodied what can only be viewed as the parties' most recent procedural missteps.

---

[1] Plaintiff's Motion to Enforce Settlement, [Dkt. 293], which was filed following several unsuccessful attempts by Plaintiff's counsel to connect with Defendants' counsel in order to finalize settlement documents, is **denied as moot** given that the parties have since reconnected and jointly submitted various filings related to the settlement. [*See* Dkt. 300, 301, 306, 309]. Plaintiff's Motion for Extension of Time is also **denied as moot**. [Dkt. 304].

As ***thoroughly*** explained in our May 29, 2020 Order denying the parties' motion, the parties are effectively attempting to settle this litigation with respect to the twelve remaining defendants through the entry of consent decrees.[2] "A consent decree is a court order that embodies the terms agreed upon by the parties as a compromise to litigation," *United States v. Alshabkhoun,* 277 F.3d 930, 934 (7th Cir. 2002), and commits the court to "continued supervision of the terms of a contract, which any party to the contract may enforce by returning to the court and initiating contempt proceedings." *Metro. Life Ins. Co. v. Hanni*, 1:17-CV-80-TLS, 2017 WL 6805318, at *2 (N.D. Ind. Sept. 14, 2017) (citing *Kasper v. Bd. of Election Comm'rs of the City of Chi.*, 814 F.2d 332, 338 (7th Cir. 1987). Unlike a stipulated dismissal, a consent decree operates as a final judgment on the merits. *United States v. Fisher*, 864 F.2d 434, 439 (7th Cir. 1988).

Because the parties displayed an incomplete awareness of the grounds on which a consent decree may be granted, we spelled them out for them:

> [A] "federal court is more than a recorder of contracts from whom private parties may purchase injunctions." *Kasper*, 814 F.2d at 338 (internal quotations omitted). The district court should not enter a consent decree whenever it "strikes two parties' fancy," nor can the parties simply stipulate to the entry of a consent decree. *Id.* Rather, because a consent decree is "an exercise of federal power, enforceable

---

[2] *See Jessup v. Luther,* 277 F.3d 926, 929 (7th Cir. 2002) ("Settlement agreements that contain equitable terms, an injunction for example, will usually be embodied in a consent decree so that the judge will have continuing jurisdiction to enforce their terms."); *D. Patrick, Inc. v. Ford Motor Co.,* 8 F.3d 455, 460, 1993 WL 418409 (7th Cir. 1993) ("[A] settlement agreement is nothing more than a contract; the imprimatur of an injunction is required to render it a consent decree enforceable through contempt); *Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 296 F. Supp. 3d 959, 968 (S.D. Ind. 2017) ("There is no apparent distinction between a 'stipulated judgment,' on the one hand, and what is called a 'consent decree' or a 'consent judgment,' on the other."); *Angie's List, Inc. v. Ameritech Pub., Inc.,* 1:07–cv–1630–SEB–DM, 2010 WL 2719225, at *1 (S.D. Ind. July 7, 2010) (equating stipulated permanent injunction to consent decree); *Verband der Zuechter des Oldenburger Pferdes e.V. v. Int'l Sporthorse Registry Inc.*, 55 U.S.P.Q.2d 1550 (N.D. Ill. 1999) (same).

> by contempt," "litigants wishing the Court to issue a consent [decree] must argue why the [decree] should issue, and cannot expect the Court unreflectively to endorse their agreement with the full authority of the federal judiciary." *Kasper*, 813 F. 2d, at 338; *Metro. Life Ins. Co.*, 2017 WL 6805318, at *2.
>
> The prerequisite to such an exercise of federal judicial authority is that a consent decree: "(1) spring from and serve to resolve a dispute within the court's subject matter jurisdiction; (2) come within the general scope of the case made by the pleadings; and (3) further the objectives of the law upon which the complaint was based." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986). Additionally, "the judge must satisfy himself that the decree is consistent with the Constitution and laws [and] does not undermine the rightful interests of third parties." *State v. City of Chicago*, 912 F.3d 979, 987 (7th Cir. 2019) (quoting *Kasper*, 814 F.2d at 338). And, in light of the fact that consent decrees require the district court to commit time and attention and resources to supervising a private settlement agreement, it must be shown that the consent decree will entail "an appropriate commitment of the court's limited resources." *Id.* Finally, the court must conclude that the consent decree is "fair, adequate, reasonable, and appropriate under the particular facts and that there has been valid consent by the concerned parties." *Bass v. Fed. Sav. & Loan Ins. Corp.*, 698 F.2d 328, 330 (7th Cir. 1983); *see also E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F. 2d 884, 889 (7th Cir. 1985).

[Dkt. 303, at 5]. Despite these clear requirements, the parties' first attempt at securing consent decrees consisted of nothing beyond their agreed-upon settlement terms. They failed to present *any* arguments or other justifications for entry of the consent decrees. We thus directed to them to "try again" and submit filings that properly and thoroughly addressed their entitlement to the entry of consent decrees. This directive conveyed fair warning regarding the issues of greatest concern to the Court, to wit, the parties' failure to explain the manner and extent to which the consent decrees represented an "appropriate commitment of the court's limited resources." [Dkt. 303, at 6-7].

Our May 29, 2020 Order also acknowledged that the parties had stipulated to the dismissal of the other four defendants named in this matter. We specifically noted that

4

"the terms of the proffered [consent decrees] appear to be virtually identical to those in the settlement agreements between Plaintiff and the dismissed defendants." [*Id.*, at n. 4]. Why the differences in the form and manner by which the parties sought to effectuate their settlement, we were not apprised. [*Id.*].

For these reasons, we ordered the parties to revise and resubmit corrected filings along with a renewed motion in accordance with our directives. Alternatively, we informed the parties that they could, of course, convert their previous "Agreed Judgments" into stipulations of dismissal.

## II. The Parties' Second Motion for Entry of Consent Decrees

The parties chose the first option and, on July 2, 2020, filed a second motion attempting to secure consent decrees. [Dkt. 306]. Though the parties' second round of submissions remedied several of the deficiencies identified in our May 29, 2020, glaring deficiencies remained.

Regarding the parties' successes, the amended filings clearly outlined the terms of the parties' agreement, providing that each defendant could pay to Plaintiff an amount in damages within the statutory range provided in the Copyright Act. Defendants further agreed to refrain from copying, selling, offering to sell, publicly displaying, or advertising Plaintiff's copyrighted works. These stipulations, we were informed, were reached voluntarily following extensive arms-length negotiations between the various parties.

Additionally, based on the representations of the parties, we found that the proposed consent decrees sprung from and were intended to resolve a dispute within our

5

subject matter jurisdiction, were within the scope of the allegations raised in Plaintiff's Complaint, and furthered the objectives of the Copyright Act by preventing additional infringements of Plaintiff's copyrighted works and by providing Plaintiff redress for the infringements that have occurred. *Local No. 93,* 478 U.S. at 525. Similarly, the proposed consent decrees were consistent with the Copyright Act in all material respects. *State v. City of Chicago*, 912 F.3d at 987. The proposed consent decrees did not undermine the interests of any third parties, nor did they conflict with the Constitution. *Id.* Given the extensive negotiations, aided by the efforts of counsel and the Magistrate Judge that preceded the parties' agreements, we concluded that the proposed consent decrees were fair, adequate, and reasonable. *Bass*, 698 F.2d at 330.

    However, despite the Court's explicit instructions, the parties again failed to remedy simple deficiencies in their proffered consent decrees. For example, we had previously noted that "the [consent decrees] do not include the signatures of the parties confirming that they do, in fact, consent to this court's continued jurisdiction over this matter, if that is their intention." [Dkt. 303, at 7]. However, the revised consent decrees *still* reflected this most obvious defect. As discussed herein, the parties have yet to resolve this error for several of the remaining defendants.[3]

---

[3] We also noted that the tendered consent decrees confusingly asserted that the Court "shall retain jurisdiction for the purpose of enforcing these decrees." [Dkt. 300, at 7]. While this assertion was not strictly improper, its superfluous retention threatened future confusion as to our jurisdiction—an area where confusion is least tolerable. *See Empress Casino Joliet Corp. v. Balmoral Racing Club*, Inc., 651 F.3d 722, 727 (7th Cir. 2011). Without explanation, the parties retained this provision in their second attempt to secure court approval. Fortunately, this issue has finally been resolved in the parties' third round of filings.

Of equal concern was the parties' continued failure to establish that the entry of the consent decrees would be "an appropriate commitment of the court's limited resources." Once again, the parties sidestepped this issue, providing only ill-conceived and non-sensical justification for their pursuit of consent decrees rather than simply stipulating to the dismissal of the remaining defendants. [4]

Accordingly, though certain deficiencies were resolved in the parties' second round of filings, others persisted which precluded our judicial authorization.

### III.     The Parties' Third Attempt at Securing the Entry of Consent Decrees

Against this discouraging backdrop, we have reviewed the parties' third Motion for Entry of Consent Decrees, noting two remaining issues that require resolution prior to the entry of the proposed consent decrees: whether the entry of consent decrees is "an appropriate commitment of judicial time and resources" and whether the proposed consent decrees reflect the parties' consents as evidenced by and through their personal signatures.

This second issue remains unresolved with respect to nine of the twelve remaining defendants. We speculate that perhaps Plaintiff has been unable to secure signed consent decrees from the following defendants: Defendants WNC of Dayton, LLC; WNC of Detroit, LLC; WNC of Des Moines, LLC; WNC of Fort Wayne, LLC; WNC of Las

---

[4] For example, the parties asserted that the proposed consent decrees would "quickly wrap up this case without the need for a time-intensive and costly trial." But how a consent decree would be any more effective here than would a stipulated dismissal, we failed to see. We reiterated that a stipulated dismissal was precisely the manner in which the matters were settled with respect to four of the defendants and the preferred procedure by which the settlement between the remaining twelve could be "quickly wrapped up."

Vegas, LLC; WNC of Napa Sonoma, LLC; WNC of Portland, LLC; WNC of San Francisco LLC; and WNC of South Bend, LLC.[5] Adding to frustration to the Court is the fact that the parties have presented the Court with *no* proposal to resolve this impasse which prevents the full and final resolution of this lawsuit.[6]

The parties maintain that consent decrees are appropriate for at least those defendants whose signatures have now been secured: WNC of Columbus, LLC; WNC of Cincinnati, LLC; and WNC of Odessa, LLC. Returning once again to the question of whether it would be an appropriate commitment of judicial time and resources to retain jurisdiction over these defendants, the parties explain:

> While Plaintiff was willing to enter into a settlement agreement with the Settled Defendants, the rampant infringement of copyrighted artwork remains a problem among paint-party studios. As such, it is important to Plaintiff to ensure public acknowledgment of the violation of her copyrights in her artwork. Plaintiff has worked hard over the past few decades to grow her business and develop her artwork to create a recognizable and profitable brand. She makes a living based on the sole rights the Copyright Act secures in her artwork. Only through a public consent decree can Plaintiff be likely to dissuade other paint-party studios from infringing on her copyrighted works. As such, a consent decree in this situation is an appropriate use of judicial resources.

---

[5] On August 7, 2020, the same day the parties filed the current Motion for Entry of Consent Decrees, Plaintiff moved to disqualify defense counsel, P. Adam Davis, arguing that "Attorney Davis has lost contact" with these defendants. Attorney Davis denied this allegations, explaining that the defendant-corporations are defunct; he maintained, however, that he "ha[d] stayed in direct contact with [the] authorized representative acting on behalf of the compote and its affiliates. He has always been and is currently the direct contact. The Undersigned has not, and cannot, communicate with defunct businesses[.]" On October 21, 2020, the Magistrate Judge denied the Motion to Disqualify, finding Plaintiff's allegations to be unproven. Plaintiff did not seek review of the Magistrate Judge's Order, nor has she taken any further action to resolve the issues identified in her Motion to Disqualify. We take this opportunity to note our growing skepticism regarding the appropriateness of consent decrees targeted at corporations that may no longer be in operation and thus presumably no longer committing acts of copyright infringement.
[6] We remind the parties that the Court is not without its own devices, however, which if necessary could be pursued to *sue sponte* dismiss this lawsuit under Federal Rule of Civil Procedure 41(b) or as a sanction for the parties' recalcitrance.

It is thus apparent that the parties' purpose has *no* relation to the copyright infringements at issue in the case, nor any need to prevent these defendants in this litigation from committing additional copyright malfeasances in the future.[7] In addition the parties' rationale rests on no cited legal authorities supporting the contention that the deterrence of other possible defendants, in other theoretical cases, is a sufficient reason for this court to sink time and resources into this particular case—one that has already necessitated extraordinary investments of both by the undersigned judge as well as the Magistrate Judge. We find ourselves once again unpersuaded that the entry of consent decrees is an appropriate judicial mechanism by which to terminate the litigation.

## CONCLUSION

Having exhausted their several opportunities afforded by the Court to establish the appropriateness of the consent decrees in this litigation, the parties' Amended Joint Motion for Entry of Consent Decrees, [Dkt. 309], is **denied**. The parties may convert their proposed consent decrees into joint stipulations of dismissal; the failure to do so will prompt a show cause order to explain why *sua sponte* dismissal by the Court should not be entered.

---

[7] The parties also complain that the dismissed defendants were in a "superior bargaining position" as compared to the remaining defendants. We fail to understand the relevancy of this argument to a determination as to whether the consent decrees are appropriate here.

Plaintiff's Motion to Enforce Settlement, [Dkt. 293], and Motion for Extension of Time, [Dkt. 304], are denied as moot.

IT IS SO ORDERED.

Date: 3/26/2021

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Cynthia Ariel Conlin
CYNTHIA CONLIN& ASSOCIATES
cynthia@conlinpa.com

P. Adam Davis
DAVIS & SARBINOFF LLC
efiling@d-slaw.com

Tony Pagan, Jr.
CYNTHIA CONLIN & ASSOCIATES
1643 Hillcrest Street
Orlando, FL 32803

Jennifer Dawn Reed
CYNTHIA CONLIN & ASSOCIATES
cynthia@conlinpa.com